# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* CHRISTINA ELLIS and JONATHAN ELLIS, Relators,<br><br>Plaintiffs,<br><br>v.<br><br>JING SHU ZHENG and SJ 5318 INVESTMENT CORP.,<br><br>Defendants. | Case No. 2:16-cv-01447-APG-NJK<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 24) |

Plaintiffs Christina and Jonathan Ellis bring a qui tam action on behalf of the United States pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq.* The Ellises assert that defendants Jing Shu Zheng and SJ 5318 Investment Corp. (SJ 5318) misrepresented the amount of rent Zheng was charging the Ellises, whose rent was being subsidized by the United States Department of Housing and Urban Development (HUD). A clerk's entry of default has been entered as to SJ 5318 Investment Corp. ECF No. 17. The Ellises now seek summary judgment against Zheng on their FCA claim.[1]

**I.  BACKGROUND**

In March 2013, the Ellises leased from Zheng a house at 4411 Melrose Abbey Place, Las Vegas, Nevada (the "Property"). ECF No. 24 at 6. SJ 5318 acted as Zheng's agent and property manager. ECF Nos. 27 at 4; 27-1. The Ellises signed a lease agreement on March 22, 2013 indicating a total monthly rent of $2,300. ECF No. 24-3.[2]

---

[1] Zheng filed a counter-claim alleging a breach of the lease agreement and damage to the apartment upon the Ellises vacating. This order does not address those claims.

[2] The Ellises also produce a second lease dated April 10, 2013, indicating a total monthly rent of $2,000. ECF No. 24-4. This lease is initialed by the Ellises, but the signatures are dated March 22, 2013. *Id.*; *see also* ECF No. 24-12 at 3, 5 (the Ellises averring they entered into two leases on or around March 22, 2013). Zheng states she never saw the second lease and would not have signed it. ECF No. 26 at 2. Whether this is a valid lease is immaterial for the purposes of this motion, as Zheng charged the Ellises as per the first executed lease.

On March 18, 2013, Zheng submitted a Request for Tenancy Approval to the Southern Nevada Regional Housing Authority (SNRHA) asking that the Property be considered for approval under the Section 8 Tenant-Based Housing Choice Voucher Program. ECF No. 24-5. Under Section 8, HUD enters into annual contribution contracts with regional public housing agencies across the United States, including the SNRHA. 24 C.F.R. § 982.151. Pursuant to the contribution contract, the SNRHA makes monthly housing assistance payments to landlords on behalf of eligible tenants. *See id.* § 982.451. The contract between the SNRHA and a landlord is known as a Housing Assistance Payments (HAP) Contract. *Id.*

The Request for Tenancy Approval submitted by Zheng proposed a monthly rent of $2,000. ECF No. 24-5. On April 10, 2013, SJ 5318 entered into a HAP Contract with the SNRHA on Zheng's behalf. ECF No. 24-1. The HAP Contract contained the terms of the SNRHA's payment assistance to Zheng on behalf of the Ellises. Part A of the HAP Contract lists the "rent to owner" as $2,000, of which $456 would be paid by the SNRHA every month as a housing assistance payment pursuant to Section 8. *Id.* at 3. Parts B and C of the HAP Contract provide, in relevant part, that: (1) the lease shall be consistent with the HAP Contract; (2) the rent payment may at no time exceed the reasonable rent as determined by the SNRHA; (3) except for the "rent to owner" payment, the owner may not accept any additional payment for rent of the unit; and (4) unless the owner has complied with all provisions of the HAP Contract, the owner does not have a right to receive housing assistance payments under that contract. *Id.* at 6, 7, 10.

Zheng received a Notice of Rent Payment and Program Abuse Warning Information, which notifies the owner that the HAP Contract will begin. ECF No. 24-2. The notice states that "[r]equiring extra ('side') payments in excess of the family's share of rent as listed . . . is considered program fraud" and will lead to the termination of the owner and family from the Housing Choice Voucher Program. *Id.* Throughout the Ellises' tenancy, Zheng received seven SNRHA Notice of Change forms notifying her of increases in the monthly HAP payment but indicating the total rent to owner remained $2,000. ECF No. 24-6.

Although the HAP Contract stated the rent was $2,000, from April 2013 to January 2015, the Ellises deposited $2,300—their monthly rental share and the extra $300 under the March 22 lease—directly into Zheng's bank account. ECF Nos. 24 at 9–10; 24-8; 24-9; 24-10. Zheng received twenty-two payments from the SNRHA under the HAP Contract for a total of $18,722. ECF No. 24-11. The Ellises moved out in January 2015, two months before the expiration of their lease agreement. ECF No. 12 at 2.

## II. ANALYSIS

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and draw reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenck, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. Agency Relationship Between Zheng and SJ 5318**

Zheng's primary argument in opposition is that SJ 5318, not her, signed the HAP Contract. She contends that SJ 5318 managed the Property and "t[ook] care of everything" for her. ECF No. 26 at 1. The Ellises respond that Zheng is liable for SJ 5318's violations of the FCA because it had actual authority to act on her behalf.

"The general principles of the federal common law of agency have been formulated largely based on the Restatement of Agency." *Doe I v. Unocal Corp.*, 395 F.3d 932, 972 (9th Cir. 2002), *on reh'g en banc*, 403 F.3d 708 (9th Cir. 2005).

> The principles of agency law . . . are well settled: actual authority consists of powers which a principal directly confers upon an agent, as well as those the principal causes or permits the agent to believe he or she possess[es] . . . . Apparent authority focuses on third parties. It arises when a third party reasonably believes that the putative agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations.

*Kristensen v. Credit Payment Svcs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014) (internal quotation and citation omitted). In the context of the FCA, "[w]hen an agent acts in the name of the entity . . . the fraudulent intent of the agent is indistinguishable from the intent of the entity. So long as the agent has actual or apparent authority to bind the entity, the fraud of the agent is sufficient to support civil liability against the entity." *United States ex rel. Rosales v. S. F. Hous. Auth.*, 173 F. Supp. 2d 987, 1003 (N.D. Cal. 2001).

Here, Zheng signed an SNRHA Statement of Property Ownership/Authorization form in which she designated SJ 5318 as her agent and authorized it to act on her behalf. ECF No. 27-1. This form, as well as Zheng's statements that SJ 5318 managed her property and took care of everything for her, are sufficient to show that SJ 5318 acted with actual authority to bind Zheng to the HAP Contract.

**B. The FCA Claim**

Under the False Claims Act (FCA), a private individual is authorized to bring an action on behalf of the United States against any entity that has knowingly presented a false or fraudulent claim to the United States government. *See, e.g.*, *United States ex rel. Anderson v. N. Telecom*, 52 F.3d 810, 812–13 (9th Cir. 1995). The FCA makes liable anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States government. 31 U.S.C. § 3729(a)(1). To establish liability under the FCA, a plaintiff must show: "(1) a false statement or fraudulent course of conduct; (2) made with scienter; (3) that was

material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).

### 1. False Statement or Fraudulent Course of Conduct

A party can sufficiently establish this first element under a theory of express or implied false certification. *United States ex rel. Ebeid v. Lungwitz*, 616 F.3d 993, 995 (9th Cir. 2010). Express certification occurs when "the entity seeking payment certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted." *Id.*

"The Housing Choice Voucher Program Guidebook published by HUD defines 'fraud' and 'abuse' in the Section 8 program as: a single act or pattern of actions made with the intent to deceive or mislead, constituting a false statement, mission, or concealment of a substantive fact." *United States ex rel. Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1187 (D. Or. 2007). The Guidebook also states that "[c]ollecting extra or 'side' payments in excess of the family share of rent or requiring the family to perform extraordinary services in lieu of payments" qualifies as fraud or abuse. HUD, Housing Choice Voucher Program Guidebook 22-2 (April 2001), https://www.hud.gov/program_offices/administration/hudclips/guidebooks/7420.10G.

Here, SJ 5318 certified on behalf of Zheng in the HAP Contract that (1) except for the rent to owner payment, she did not receive and would not receive any other payments or contributions for rental of the Property; and (2) the terms of the lease were in accordance with all provisions of the HAP Contract. ECF No. 24-1 at 7, 10. Zheng does not dispute that she charged $300 above the "rent to owner" amount listed in the HAP Contract. Therefore, no genuine issue of fact remains that charging the extra rent was a fraudulent course of conduct under the FCA.

### 2. Scienter

The Ellises argue that because Zheng signed a Request for Tenancy Approval indicating $2,000 as the proposed rent, entered into the HAP Contract setting rent at $2,000, and received a Notice of Rent Payment and Program Abuse indicating the rent to the owner was $2,000, she knew or should have known she was not allowed to charge rent in excess of the HAP Contract.

Zheng's only response is that she did not sign the HAP Contract. As discussed above, SJ 5318 had actual authority to bind Zheng to that agreement.

The FCA defines "knowing" and "knowingly" as having actual knowledge of the information, acting in either deliberate ignorance, or acting in reckless disregard for the information's truth or falsity. 31 U.S.C. § 3729(b)(1)(A). When SJ 5318 executed the HAP Contract on Zheng's behalf, she agreed to comply with its provisions. Various sections of the HAP make clear that additional payments above the specified "rent to owner" are prohibited. Zheng does not dispute that she received the Notice of Rent Payment and Program Abuse Warning indicating the rent to owner was $2,000 and that charging above this amount constituted fraud. Nor does she dispute she received the Notice of Change forms, each of which indicated the $2,000 rent. Even considering only the first lease signed by the parties, which indicated a rent of $2,300, the HAP Contract states that when there are conflicts between the terms of the lease agreement and the terms of the HAP Contract, the HAP Contract controls. Therefore, even viewing the facts in the light most favorable to the defendants, no genuine issue of fact exists that Zheng deliberately ignored or recklessly disregarded the terms of the HAP Contract when she charged the Ellises an extra $300 in rent while simultaneously receiving housing payments.

### 3. Materiality

The third element of an FCA claim requires that a false statement or course of conduct "be material to the Government's decision to pay out moneys to the claimant." *See Hendow*, 461 F.3d at 1172; *see also Ebeid*, 616 F.3d at 997. There must be a causal relationship between the fraudulent conduct and the government's loss. *Hendow*, 461 F.3d at 1172.

Part B, section 7(b) of the HAP Contract states that the owner does not have a right to receive housing assistance payments unless she has complied with all provisions of the contract. ECF No. 24-1 at 6. The HAP Contract and federal regulations prohibit Zheng from charging any payment for rent in addition to the "rent to owner." *Id.* at 10; 24 C.F.R. § 983.353(b)(2)–(3). Zheng's collection of more than the specified "rent to owner" amount from the Ellises affected a basic term of the HAP contract and was relevant to the government's decision to continue to pay

Zheng monthly subsidies. *See Sutton*, 564 F. Supp. 2d at 1189. Therefore, no genuine issue of fact exists as to the materiality of Zheng's conduct to the government's decision to pay out money.

### 4. Causing the Government to Pay Out Money

The Ellises state, and Zheng does not dispute, that the SNRHA paid out moneys on their behalf to Zheng. Under the fourth element, the fraudulent conduct must have caused the government to pay out moneys. *Hendow*, 461 F.3d at 1177. The SNRHA receives annual contribution payments from HUD pursuant to Section 8 and uses those funds to subsidize rent payments for qualified applicants. Therefore, no genuine issue of material fact exists that the government paid out moneys pursuant to the HAP Contract based upon Zheng's confirmation that she was acting in compliance with that contract.

Because no genuine issue of fact exists on any of the four elements of the FCA claim, I grant summary judgment to the Ellises on their FCA claim against Zheng.

**C. Damages**

Under the FCA, a violator is liable to the government for a civil penalty of not less than $5,500.00 and not more than $11,000.00, plus three times the amount of damages which the government sustains because of the violator's acts. 31 U.S.C. § 3729(a)(1)(G); 28 C.F.R. § 85.3(a)(9).

### 1. Civil Penalties

Each violation of the FCA gives rise to separate liability and therefore a separate civil penalty. *Hendow*, 461 F.3d at 1170–71. The Ellises aver that they deposited into Zheng's bank account the rent under the HAP Contract, "along with $300 payment from April 10, 2013 to January 2015 . . . ." ECF No. 24-12 at 3, 5; *see also* ECF Nos. 24-9; 24-10 (transaction receipts for $300 from June 2013 through January 2015). Zheng offers no evidence in opposition. Therefore, there are no issues of fact that the Ellises were charged the extra $300 in rent 22 times.

"[I]n determining the amount of the penalty, the district court should consider (1) the good or bad faith of the defendants; (2) the injury to the public; (3) the defendant's ability to pay; and

(4) the necessity of vindicating the authority of the responsible federal agency." *Fed. Elec. Comm'n v. Furgatch*, 869 F.2d 1256, 1258 (9th Cir. 1989). The Ellises argue that the maximum penalty is warranted by the government's interest in preventing fraud. They do not argue that Zheng acted in bad faith, nor is there any evidence to that effect. There is an injury to the public in that HUD could have entered a different contract with a compliant owner, subsidizing another needy renter, however the extent of this injury is not well-defined. Finally, Zheng is representing herself pro se, and states that she cannot afford legal representation. This leads to the inference that she may not be able to pay the maximum penalties. The appropriate penalty is $5,500 per violation. Zheng is thus liable for $121,000 in civil penalties.

2. <u>Treble Damages</u>

"The FCA, itself, instructs the district court to treble damages . . . ." *United States v. Bourseau*, 531 F.3d 1159, 1173 (9th Cir. 2008); *see also* 31 U.S.C. § 3729 (requiring treble damages except in certain circumstances in which the violator cooperates, in which case no less than double damages may be assessed). "Ordinarily the measure of the government's damages [under the FCA] would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful." *United States v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003) (alteration in original). In *Mackby*, the Ninth Circuit noted that had the defendant "been truthful, the government would have known that he was entitled to nothing." *Id.* at 1019; *see also United States v. Baran*, No. CV 14-02639 RGK (AJWx), 2015 WL 5446833, at *8 (C.D. Cal. Aug. 28, 2015) ("Had Defendant been truthful about the extra payments she was receiving from Plaintiff, the government would not have distributed those monthly payments.").

The HAP Contract here states that an owner who does not comply with the contract's requirements – including the requirement not to charge extra rent – "does not have a right to receive housing assistance payments." ECF No. 24-1 at 6. The Ellises have produced evidence showing that the entire time Zheng was getting payments from SNRHA, she was also charging them $300 in extra payments. Had Zheng been truthful about these payments, she would not have had a right to receive any housing assistance payments from the government. *See Baran*,

2015 WL 5446833, at *8; *Cummings v. Hale*, No. 15-cv-04723-JCS, 2017 WL 3669622, at *9–10 (N.D. Cal. May 17, 2017). According to SNRHA records, Zheng received a payment from the government every month from April 2013 through January 2015, for a total of $18,722. ECF No. 24-11. The treble damages provision of the FCA makes Zheng liable for damages of $56,316.00.

### III. CONCLUSION

IT IS THEREFORE ORDERED that the plaintiffs' motion for summary judgment **(ECF No. 24) is GRANTED**. A penalty is entered against Zheng and in favor of the United States in the amount of $121,000.00, and a damages award is entered against Zheng and in favor of the United States in the amount of $56,316.00, for a total amount of $177,316.00.

IT IS FURTHER ORDERED that the parties shall file a proposed joint pre-trial order on Zheng's counterclaims and the claims against SJ 5318 **within 30 days of this order**.

DATED this 26th day of February, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE